441 So.2d 1274 (1983)
STATE of Louisiana
v.
Robert J. RODRIGUE.
No. 83 KA 0256.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Rehearing Denied December 22, 1983.
*1276 James Alcock, Asst. Dist. Atty., Houma, for plaintiff and appellee.
Joseph R. Raggio, Baton Rouge, for defendant and appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
Defendant, Robert J. Rodrigue, was charged by grand jury indictment with the crimes of aggravated kidnapping in violation of LSA-R.S. 14:44 on Count 1 and aggravated crime against nature in violation of LSA-R.S. 14:89.1 on Count 2. Defendant was tried by a twelve-person jury, found guilty as charged on both counts, and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence on Count 1, and fifteen (15) years at hard labor on Count 2, to run consecutively with the sentence received on Count 1. Defendant now appeals his convictions and sentences, alleging 16 assignments of error, and briefing 12 assignments of error in three arguments. The defendant has expressly abandoned four of his assignments of error and we will not consider them in this opinion. Rule 2-12.4, Uniform RulesCourts of Appeal. Additionally, after a short outline of the facts, we will address defendant's assignments in the three argument format suggested by defendant's brief.
Although the testimony is sometimes directly in conflict, it appears certain that on September 21, 1979, Linda Reeves, a resident of Mississippi who was in Houma only temporarily, had just concluded a shopping trip to the local mall. At this point, Linda was to be home in about a half-hour to help her mother cook supper for her stepfather. As she proceeded through an intersection, the defendant allegedly hollered from his 18 wheel truck (without the float) that Linda's car was smoking. Concerned because it was her stepfather's car, Linda crossed the intersection and turned on to Coteau Road where she pulled the car over on the shoulder of the road. The defendant pulled up behind her. After he inquired as to the car's condition, Linda testified that without *1277 warning or provocation, the defendant grabbed Linda's hair, began slapping her, and forced her into the cab of his truck. Shoving Mrs. Reeves into the sleeping compartment of the cab, the defendant then tied her hands and feet with some kind of wire. Subsequent to this, the testimony of Mrs. Reeves is that the defendant tore open her blouse and pulled her pants down; at this point, the defendant got behind the wheel and drove for a few miles. (The defendant testified he stopped at a school nearby).
After striking the victim several more times and cussing the female gender in general, the defendant then forced Linda to perform oral sex upon him. Although she testified the defendant threatened many times to kill her, Linda thought because she sympathized with his marital problems the defendant released her after it became dark with the threat to kill her if she told anyone what he had done. Linda drove back to her mother's trailer where she immediately took a shower and left with her mother-in-law to return to Mississippi. Linda's mother testified that she noticed marks and abrasions on Linda's arms and ankles, testifying that these marks appeared to be the result of something tied too tightly that had cut into the skin. Later, Linda's step-father called the local sheriff's office. The investigators arrived a short time after Linda departed for Mississippi. Subsequently, the defendant was indicted by the grand jury and unanimously convicted after deliberations of only 19 minutes. Defendant then filed this appeal.

ARGUMENT NO. 1
(Assignments of Error Nos. 6, 7, 10, 11, 12 and 13)
By this argument, defendant alleges that the prosecution failed to prove beyond a reasonable doubt each and every element of the crimes with which defendant was charged, that is, the crimes of aggravated kidnapping and aggravated crime against nature.
The proper standard of appellate review for sufficiency of evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moore, 432 So.2d 209 (La. 1983). Aggravated kidnapping occurs when the offender forcibly seizes and carries a person from one place to another with the intent to force the victim, or some other person, to perform a sexual act, or acts, for the advantage of the offender as a condition of the release of the person seized. State v. Sonnier, 402 So.2d 650 (La.1981). Sexual gratification constitutes "something of apparent value" for the purposes of the statute defining aggravated kidnapping. Id.
LSA-R.S. 14:44 defines aggravated kidnapping and provides as follows:
§ 44 Aggravated kidnapping
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
An examination of the record before us on appeal reveals that the victim was forced by defendant into his truck and was pushed by him into the compartment in the truck behind the two front seats. He slapped her repeatedly, tied her hands together and tied her feet behind her with some kind of wire. Defendant then drove to a site some distance away and forced the victim to commit an act of oral sex upon him. The record *1278 further reveals that the victim identified her attacker as defendant at an in-court identification and had previously picked out his picture as her attacker as well as having previously identified him at a line-up. She further testified that defendant kept saying he was going to kill her. The victim's mother corroborated the victim's testimony that she had been tied at her wrists and ankles by testifying that her daughter's skin at her arms and ankles looked like it had been "tied real tight and cut into the skin." Defendant testified in his own behalf, saying that a sexual encounter with the female victim did take place at the time and place so determined but with the consent of the victim and that the act was one of sexual intercourse with consent. Further, he stated that the victim had entered his truck of her own accord and freely accompanied defendant down the highway to the spot where the incident took place.
Although the record presents us with a conflict in testimony, we also see that viewing the evidence in the light most favorable to the prosecution, sufficient corroborating evidence was entered at trial to prove the elements of: (1) forcing the victim to give up something of apparent present value, and (2) forcible seizing and carrying of a person from one place to another. However, the record does not sustain the finding of the element required by the aggravated kidnapping statute that the offender forced the victim to submit to his sexual demands as a condition of her release or even the promise of a release. When the victim was questioned, she denied that defendant made any statements indicating a promise of release or that he would release her in return for her cooperation. Nor is there any indication in the transcript of testimony that defendant was asking for any other sort of ransom which would secure the release of the victim.
In the very recent case of State v. Moore, 432 So.2d 209, 225 (La.1983), the Louisiana Supreme Court held:
Although the evidence establishes that the victim was forcibly seized and deprived of his valuables, the essential element of the crime, intent to deprive in order to secure a release, is missing. There is no evidence in the record from which any rational trier of fact could have concluded the victim was deprived of his valuables in exchange for his release or promise of release. The crime of aggravated kidnapping is limited to cases of kidnapping for ransom (i.e., kidnapping with intent to extort). LSA-R.S. 14:44, comment; State v. English, 367 So.2d 815, appendix at 823 (La.1979). (emphasis in original).
The instant record is replete with evidence to prove the elements of the crime of simple kidnapping which is defined at LSA-R.S. 14:45 and reads, in pertinent part, as follows:
A. Simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent;
* * * * * *
B. Whoever commits the crime of simple kidnapping shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than five years, or both.
LSA-C.Cr.P. article 821(E) effective in 1982 allows the appellate court to modify the verdict of the lower court and render a judgment of conviction on a lesser and included responsive offense where the appellate court finds that evidence, viewed in the light most favorable to the state, supports only a conviction of the lesser included responsive offense. According to the Comment following article 821, this article is a codification of the ruling in State v. Byrd, 385 So.2d 248 (La.1980).[1]
Therefore, the conviction of aggravated kidnapping is reduced to simple kidnapping, *1279 and the case is remanded to the lower court for resentencing.
We will now address the question of the sufficiency of evidence to find the defendant guilty of each and every element of the crime of aggravated crime against nature. LSA-R.S. 14:89.1 defines aggravated crime against nature and provides as follows:
§ 89.1 Aggravated crime against nature Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but such resistance is overcome by force;
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) Where through idiocy, imbecility or any unsoundness of mind, either temporary or permanent, the victim is incapable of giving consent and the offender knew or should have known of such incapacity;
(4) Where the victim is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of mind produced by a narcotic or anesthetic agent, administered by or with the privity of the offender; or when he has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of such incapacity; or
(5) Where the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Whoever commits the crime of aggravated crime against nature shall be imprisoned at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole.
The offense of crime against nature is committed by unnatural carnal copulation through the use of the genital organ of one of the participants. State v. Frentz, 354 So.2d 1007 (La.1978). When conflict in testimony arises as to a factual matter, the question of credibility of the witnesses rests within the sound discretion of the trier of fact; and such factual determination will not be disturbed on review unless clearly contrary to the evidence. State v. Hudson, 361 So.2d 858 (La.1978).
We have reviewed the testimony, including that set forth earlier in this report and have determined that the elements of the offense of crime against nature (that is, unnatural carnal copulation through the use of the genital organ of one of the participants and prevention of the victim's resisting the act by threats of great bodily harm accompanied by apparent power of execution) were proved by the state beyond a reasonable doubt using the standard of Jackson v. Virginia, supra. See, e.g., State v. Winn, 412 So.2d 1337 (La.1982). Moreover, defendant himself testified that it is possible that he had oral sex with the victim at the time of the incident in question. We find the state has met beyond a reasonable doubt its burden of proving all the elements of aggravated crime against nature as set out in LSA-R.S. 14:89.1(2) and we sustain defendant's conviction therefor.

ARGUMENT NO. 2
(Assignments of Error Nos. 1, 8, 9, 14 and 16)
By these assignments the defendant complains the trial judge erred when he denied defendant's pre-trial and post-trial motions for change of venue. These motions were based on the grounds that defendant had received much advance publicity in relation to his previous murder charge and was, therefore, prejudiced at the instant trial. Defendant argues specifically that he was not allowed to quiz the jurors participating in the instant trial to determine if the pre-trial publicity received by defendant played a part in their returning a verdict of guilty on both counts.
On examining the record before us, it is evident that the trial judge carefully set forth the procedure he would follow on voir dire to safeguard against any inflammatory or prejudicial remarks that could possible be forthcoming from any prospective jurors. Further, the trial judge questioned each prospective juror, at first taking only six at *1280 a time into the courtroom and, where one juror did indicate some prior knowledge of defendant's prior charge or the publicity surrounding defendant in relation to that murder charge, the trial judge questioned that particular juror out of the presence of the other prospective jurors. The number of prospective jurors questioned at one time was then increased to 14 with the trial judge continuing his very careful voir dire until 13 jurors had been chosen and sworn in. The defense used but six of its allotted peremptory challenges. The trial judge carefully explained to the jurors that any mention of another crime could be prejudicial to defendant and must be avoided.
Relevant factors in determining whether to change venue include: the nature of pre-trial publicity and the degree of circulation; the connection of government officials with the release of publicity; the length of time between dissemination and trial; the severity and notoriety of the offense; the area from which the jury is to be drawn; other events affecting or reflecting the attitude of the community or jurors toward defendant; the degree to which publicity has circulated in areas to which venue could be changed; the care exercised and ease encountered in selecting a jury; the jurors' familiarity with publicity and its resultant effects; the peremptory challenges for cause exercised by defendant; and any factors likely to affect the candor and veracity of jurors. State v. Rodrigue, 409 So.2d 556 (La.1982).
LSA-C.Cr.P. article 622 provides as follows:
Art. 622. Grounds for change of venue
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
Granting or denying a change of venue rests within the sound discretion of the trial judge and his ruling denying a motion for a change of venue will not be disturbed on appeal unless the evidence affirmatively shows that such ruling was erroneous and a clear abuse of judicial discretion. State v. Sonnier, 379 So.2d 1336 (La. 1979); State v. Matthews, 354 So.2d 552 (La.1978).
The record reveals that the trial judge had before him a pre-trial motion for change of venue and a post-trial motion for change of venue and that all the factors needed to be considered were taken into consideration. Although we do not have the benefit of the transcription of the hearing on the pre-trial motion for change of venue, defendant has not shown that a post-trial quiz of the jurors participating in the instant trial could have elicited any showing of bias or prejudice on their part stemming from adverse publicity resulting from a charge different from the instant one. Moreover, the evidence in the record shows affirmatively that the trial judge acted within his sound discretion.
We find no merit in these assignments of error.

ARGUMENT NO. 3
(Assignment of Error No. 15)
By this assignment, the defendant contends that the trial court erred when it denied defendant's motion for new trial based on newly discovered evidence. After trial, defendant produced an additional witness which he alleges he had not been able to contact prior to trial and now argues that, had this witness's testimony been introduced at trial, it would probably have changed the verdict of guilty.
LSA-C.Cr.P. article 851 entitled "Grounds for new trial", provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown *1281 to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
* * * * * *
In considering a motion for new trial based on newly discovered evidence, the test to be used is not simply whether another jury might bring in another verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). The trial court's decision on a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741 (La.1982).
The record contains the transcript of the hearing held on defendant's motion for new trial wherein the newly discovered witness testified at length. That testimony supports defendant's claim that defendant discovered the true name of this witness only after defendant's conviction at trial on the merits and that contact with this person was made at that point in time. The new witness was questioned extensively to determine whether or not his testimony could materially affect the verdict which had been rendered at the trial on the merits, with both counsel for the defendant and the State participating in the examination of the new witness on direct, cross and re-direct examination. The trial court in denying defendant's motion determined that the testimony adduced was relative only to a momentary incident which occurred at a point in time after the criminal acts with which defendant was now charged had happened and would not in any way change the verdict of the jury. Further, he felt that such witness was not in any position to contribute more evidence in favor of defendant than had just been furnished at the hearing.
We have fully reviewed the transcript of testimony taken at the hearing for new trial and find no abuse of discretion on the part of the trial judge in denying defendant's motion for new trial. There is no merit in this assignment of error.
The defendant's conviction and sentence for aggravated crime against nature is affirmed; conviction for aggravated kidnapping is reduced to conviction of simple kidnapping and the case is remanded to the trial court for resentencing in accordance with this opinion.
AFFIRMED IN PART, AMENDED IN PART AND REMANDED.
NOTES
[1] The application of article 821(E) brings to our mind a question as to whether the defendant must have filed a motion for post-conviction judgment of acquittal. However, since the trial in this case was held before the effective date of LSA-C.Cr.P. 821, and the record shows that the defendant did file a motion for new trial, we feel that defendant preserved his right to review and State v. Byrd is applicable.