482 So.2d 896 (1986)
STATE of Louisiana, Appellee,
v.
John DOOLITTLE, Appellant.
No. 17488-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1986.
Rehearing Denied February 20, 1986.
*897 Richard Goorley, Asst. Indigent Defender, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, LA, Paul J. Carmouche, Dist. Atty., Tommy J. Johnson, Asst. Dist. Atty., Shreveport, for appellee.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
After being found guilty by jury verdict of aggravated rape, aggravated kidnapping, armed robbery, and aggravated crime against nature, defendant appeals his convictions and sentences. We address the five assignments of error argued by defendant about his motions for mistrial or to suppress; about the admissibility of his res gestae statements; and about his sentence. The assignments which were not briefed are considered abandoned. State v. Williams, 338 So.2d 672 (La.1976).
Except for the crime of aggravated kidnapping, we affirm all convictions. The evidence is sufficient to convict defendant only of simple kidnapping. We reduce the conviction to simple kidnapping and remand for resentencing on that crime. CCrP Art. 821(E). The State proved that defendant forcibly seized, carried away, raped and robbed the victim, but did not prove that victim submitted to defendant's abuse in order to secure her release. LRS 14:44.

FACTS
About 2:00 a.m. on July 22, 1984, the victim drove a friend to a Shreveport hospital. While she waited his safe entrance into the hospital, the victim departed her car, intending to relieve herself. Apparently laying in wait and armed with a pistol, defendant jumped the victim, knocked her down, grabbed her face with his yellow-gloved hand, and placed the gun to her head. When the victim screamed, defendant told her he would kill her if she did not be quiet. Defendant forced the victim onto the front floorboard of her car, telling her to stay there and that if she looked at him he would kill her. The victim was able to *898 sneak a glimpse of defendant one or more times. She noticed that he was wearing clean, white, hightop tennis shoes and that he talked constantly while driving away with her to some destination in Shreveport.
On his way to his chosen destination defendant told the victim he was 24 years old, from "up north," that he once had a white girlfriend, and that he liked white women. In less than delicate language defendant told his victim what he intended to do to her, which, when related by her from the witness stand, provoked defendant's assignment about the admissibility of res gestae statements which he contends were highly prejudicial and inadmissible.
Once at his destination a few miles from the site of the abduction, defendant forced his victim to pull her clothing over her face and to otherwise undress, threatening her with the pistol. Defendant performed cunnilingus on her, then sexual intercourse, and took $12 from the victim's purse. He told defendant to put her clothes back on and then drove near the hospital where he allowed her to exit the car. She immediately reported the crimes to a hospital security officer who in turn called the police. The victim's car was later found abandoned several blocks away. Police had defendant under surveillance on August 21 and arrested him for the theft of gasoline from a Shreveport convenience store. At police request, defendant agreed to participate in a lineup.
The victim viewed a video tape of the line up and thought it "possible" that defendant was her attacker, although she could not positively identify him. Execution of a search warrant for defendant's home and car produced tennis shoes and yellow gloves as described by the victim, incriminating writings, and other things. Hair and fluid samples from defendant were also highly incriminating.
We renumber and address defendant's assignments.

ASSIGNMENT ONE: RES GESTAE STATEMENTS
Defendant complains that the testimony of the victim
[Defendant said] he liked white women...
He said [black women] were bitches and he wanted to eat a white girl's p---. * *
He said on the way back ... "I finally got me a southern white girl,"
was highly prejudicial and denied him a fair trial. Defendant unsuccessfully sought to suppress these statements pre-trial on the grounds of irrelevancy and prejudice.
As res gestae statements, defendant's comments to the victim during the course of the crime are relevant. LRS 15:447. State v. Williams, 431 So.2d 885 (La.App. 2d Cir.1983), writ denied. Res gestae statements of a defendant are highly probative and are generally admissible unless it is shown that specific prejudice outweighs the probative value of the statements. See State v. Smith, 418 So.2d 515 (La.1982); State v. Clift, 339 So.2d 755 (La.1976); State v. Hatch, 305 So.2d 497 (La.1974), cert. denied 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975). Compare State v. Davenport, 445 So.2d 1190 (La. 1984); State v. Ludwig, 423 So.2d 1073 (La.1982).
It was obvious to the jury that the defendant and his victim were not of the same race. Defendant's own statements about his motive and intent were probative of the elements of intent in one or more of the crimes charged. It was proved that defendant did what he said he was going to do. In this context, the fact that he referred to his victim as a white woman is no more prejudicial to him than if he had said a short, or tall, or skinny, or fat woman. Under the circumstances we find no error. The probative value of defendant's statement is not outweighed by any assumed prejudice.

ASSIGNMENTS 2-5: MISTRIALS
CCrP Arts. 770 and 771 address the situations when prejudicial remarks are made in the presence of a jury. Art. 770 applies when certain remarks are made by a judge, *899 district attorney, or a court official. Art. 771 applies in situations outside the scope of Art. 770:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Art. 771 leaves the decision whether to grant a mistrial or to admonish the jury to the sound discretion of the trial court. State v. Smith, supra. A trial judge should grant a mistrial only where the prejudicial remarks result in substantial prejudice to the defendant and make it impossible for him to obtain a fair trial. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Johnson, 440 So.2d 838 (La.App. 2d Cir. 1983). Mistrial is a drastic remedy which is only authorized where such substantial prejudice would otherwise result to the accused. State v. Smith, supra.

MISTRIAL: HANDWRITING EXPERT
Before expert testimony was elicited, the trial court ruled that testimony of similarities between the defendant's handwriting and the handwriting found in defendant's home and car would not be admissible because of the State's failure to respond to discovery. The State's handwriting expert was instructed about this limitation imposed by the court's ruling. Nonetheless and unresponsively, the expert later said he found similarities in the two handwritings. Defendant moved for a mistrial. The trial judge, agreeing with the State that the remark was unintentional, denied the mistrial and admonished the jury by getting the expert to admit that the conclusion could not be drawn that defendant wrote the incriminating notes. The prosecutor later followed a similar course after questioning resumed.
Defendant does not question the quality of the admonition, but argues that the admonition was not sufficient to insure a fair trial. CCrP Art. 771. The jury knew the notes came from defendant's car and home. Under these circumstances we cannot say that the trial court abused its discretion in this ruling denying a mistrial.

MISTRIAL: VICTIM'S TESTIMONY
When asked if she had gone back to the scene of the abduction, the victim answered unresponsively, "Yes, I checked in [the] hospital on the 25th and went into shock." The court denied defendant's motion for mistrial. The victim did not explain why she went into shock or otherwise relate this answer to the defendant. We cannot presume prejudice. We find no abuse of the trial court's discretion denying a mistrial in these circumstances. CCrP Art. 771.

MISTRIAL: EXCULPATORY EVIDENCE
In this assignment, defendant claims that the trial court erred by not granting a mistrial for an alleged violation of the State's duty to disclose exculpatory evidence or Brady material, and this error led to the trial court's erroneously denying his motion to suppress. Defendant argues that the withheld evidence dealt with the fact that the victim kept her eyes closed during the entire ordeal. The record reveals, however, that the victim, while shielding her eyes as directed, did get a glimpse of her attacker.
*900 The State revealed through discovery that the victim could not positively identify the defendant. We find that the "evidence" not disclosed was not exculpatory in the sense of Brady, but explanatory of why the victim could not positively identify the defendant. The victim testified that she kept her eyes shielded because the assailant threatened to kill her if she looked at him. The victim explained that she was able to get very small glimpses of her assailant and that she was also able to give a general description of her attacker. She also testified that she never really got a good look at him and that she could not positively identify the defendant as the person who attacked her. The prosecution, responding to defendant's motions for discovery, was candid in admitting that the victim in this case could not positively identify the defendant as her assailant. This fact was presented at the hearing on the motion to suppress the identification evidence. There is no factual basis to support defendant's claim that the victim had her eyes completely closed at all times, however. We find no error.

MISTRIAL: PROSECUTOR ARGUMENT
Defendant claims that the prosecutor exceeded the scope of closing argument when on rebuttal he stated:
With this verdict the trial will be over for each of you, but it won't be over for [the victim]. It will never fully be over for her. The early morning hours of July 22, 1984 will be imprinted on her mind forever. For every second of every minute of every hour of every day the terror, the fear
Defendant objected and moved for mistrial, arguing the prosecutor's remarks were an attempt to appeal to the prejudices and sympathies of the jury. The trial court overruled defendant's motion.
The scope of argument is governed by CCrP Art. 774:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A trial judge has wide discretion in controlling the scope of closing argument. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Lee, 340 So.2d 180 (La.1976). An improper closing remark will not be sufficient to overturn a conviction unless this court is convinced that the remark influenced the jury and contributed to the verdict. State v. Messer, 408 So.2d 1354 (La. 1982); State v. Dupre, 408 So.2d 1229 (La. 1982).
We cannot find that the remarks complained of contributed to the verdict. We do not find that the trial court abused its discretion in these rulings. CCrP Arts. 774, 771.

ASSIGNMENT 6: SENTENCES
Defendant was sentenced to life imprisonment for aggravated rape, life imprisonment for aggravated kidnapping, 10 years imprisonment for aggravated crime against nature, and 60 years imprisonment for armed robbery. All sentences are at hard labor without benefit of parole, probation, or suspension of sentence and are to run consecutively.
Defendant argues that his sentences are unconstitutional because the trial judge ordered them served consecutively rather than concurrently. LSA Const. Art. 1, § 20. We disagree.
When multiple convictions result from a single course of conduct, consecutive sentences require particular justification. State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1984); State v. Lewis, 416 So.2d 921 (La.1982); State v. Tomlin, 478 So.2d 622 (La.App.2d Cir.1985). Factors to be considered are the enumerated considerations of CCrP Art. 894.1 and *901 whether the defendant poses an unusual risk to the public safety. Tomlin, supra.
The trial court noted that defendant had a prior felony conviction and further stated that the random circumstances of defendant's criminal conduct were likely to recur. Given the prolonged, deliberate, and diverse circumstances of each of these crimes, we find no abuse of the trial court's discretion in imposing consecutive sentences.

AGGRAVATED KIDNAPPING
Although defendant did not, in his assignments of error, question the sufficiency of the evidence, we sought briefs and now determine that the evidence was insufficient to convict defendant of aggravated kidnapping. State v. Raymo, 419 So.2d 858 (La.1982); State v. Russell, 448 So.2d 798 (La.App. 2d Cir.1984), writ denied.
LRS 14:44 defines aggravated kidnapping as:
... the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another, or * * *
(3) The imprisoning or forcible secreting of any person. Emphasis ours.
Although sexual intercourse has been held to be a thing of value, there is simply no evidence in this record which shows that defendant forced the victim to engage in sexual intercourse "in order to secure [her] release ..."
In State v. Moore, 432 So.2d 209 (La. 1983), the supreme court found that an essential element of aggravated kidnapping is the intent to force the victim or another to give up a thing of value "in order to secure a release." See State v. English, 367 So.2d 815 (La.1979); State v. Hunter, 454 So.2d 131 (La.App. 2d Cir.1984), writ denied; State v. Harris, 480 So.2d 943 (La. App. 2d Cir.1985). Compare, however, State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Winn, 412 So.2d 1337 (La.1982); and State v. Polk, 376 So.2d 151 (La.1979).
Where there is no evidence which shows that the victim submitted to defendant to gain her release, a rational trier of fact could not have found that essential element of aggravated kidnapping beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), n. 1, writ denied; LRS 15:438.
Simple kidnapping in LRS 14:45 reads in part:
Simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; ...
We find that the evidence supports a conviction of simple kidnapping beyond a reasonable doubt, a lesser included offense of aggravated kidnapping. We reduce the conviction of aggravated kidnapping to simple kidnapping. CCrP Art. 821(E); State v. Rodrigue, 441 So.2d 1274 (La.App. 1st Cir.1983).

DECREE
Defendant's conviction of aggravated kidnapping is reduced to simple kidnapping. The conviction and sentence for aggravating kidnapping is set aside and the case is remanded for resentencing for simple kidnapping. All other convictions and sentences are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.