550 So.2d 740 (1989)
STATE of Louisiana, Appellee,
v.
Jeffery Dale NEAL, Appellant.
No. 20707-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Writ Denied January 12, 1990.
*741 Larry D. Jefferson, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Charles Brumfield, John P. Spires, Asst. Dist. Attys., for appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Defendant Neal was charged with aggravated rape and aggravated kidnapping. He was first tried on the aggravated rape charge and convicted of sexual battery, and then tried for aggravated kidnapping and found guilty as charged. On the aggravated kidnapping charge, he was sentenced to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, with this sentence to run concurrently with the sentence imposed for the sexual battery conviction. This appeal is from defendant's conviction and sentence for aggravated kidnapping.
The defendant argued four assignments of error.
Factual Context
On October 24, 1986, the victim asked her friend Bud Madison to take her out that evening. He agreed and they dropped the victim's children off at her sister's house. After they left, Madison changed his mind about going out, and the victim got out of the truck and began walking in the neighborhood.
She soon heard someone approaching and was suddenly grabbed from behind by the defendant. He held a knife to her throat, asked her if she "had ever been cut" and told her not to scream. He dragged her to an area behind a vacant house approximately 150 feet off the main highway. The victim told the defendant she would do anything if he wouldn't hurt her. Defendant again threatened to kill her unless she was quiet. He ordered her to undress, forced her to engage in oral sex, and raped her. She testified that she complied with his demands because she was afraid he would kill her.
The victim then asked if she could leave, but the defendant refused, stating that he had a gun and would shoot her if she tried to escape. The victim testified at trial that defendant then initiated a conversation with her, and the idea of her making money for him by prostituting herself was discussed. He told her if she would make money for him in this way he would release her. She testified that she went along with his ideas in order to appease him and to hasten her release. He then allowed her to dress but did not allow her to put on her bra or panties.
They began walking again and defendant led her to a park where he raped her and forced her to engage in oral sex again. They then left the park and headed towards a bar. The defendant told her she was going to prostitute for him, and sent her into the bar alone. Once inside, the victim told the owner of the bar that there was a man outside who was going to kill her.
*742 The police were called. While waiting for the police to arrive, several customers entered the bar, including the defendant Neal. The victim identified him to the bar owner, and she asked him to go back outside. The police arrived, and she identified Neal to them. She went with them to the police department and told them about the rapes. They asked her to retrace the route taken by the defendant and herself, and to point out the locations where she had been raped. They found her bra and panties which she had not put back on after the first rape. They then took her to the hospital for an examination.
When the police arrived at the bar, the defendant was standing around outside. A description of the defendant, and of a white jacket he was wearing, had been given the police over the radio. Neal was wearing a white jacket. The defendant denied having a weapon, but when he was searched the police found a knife in his pocket.
Double Jeopardy
In his first assignment of error, the defendant asserts that the conviction for aggravated kidnapping constitutes double jeopardy and that the trial court erred in denying his motion in arrest of judgment based on these grounds.
A person cannot twice be put in jeopardy for the same offense. U.S. Const. Amend. 5th; La.Const. 1974, Art. 1, § 15; La. C.Cr.P. Art. 591; State v. Knowles, 392 So.2d 651 (La.1980). In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Supreme Court established the following test for determining whether two offenses are the same for purposes of double jeopardy:
"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
This rule is constitutionally required of the states. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); State v. Knowles, supra.
Louisiana also uses the "same evidence" test:
"... If the evidence required to support a finding of guilt of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all the evidence introduced at trial."
State v. Coody, 448 So.2d 100, 102, 103 (La.1984). State v. Knowles, supra. However, the "same evidence" test does not preclude a prosecution for more than one offense of a defendant who "goes on a crime spree and violates more than one criminal statute within a short time span." State ex rel. Smith v. Phelps, 345 So.2d 446, 450 (La.1977).
The crime of aggravated rape is defined by La.R.S. 14:42, which provides as follows:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
2) When the victim is prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution.
3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate" shall mean:
1) Commit the act of rape.
2) Physically assist in the commission of such act.
C. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit *743 of parole, probation, or suspension of sentence.
The crime of aggravated kidnapping is set forth in La.R.S. 14:44, which provides as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
1) The forcible seizing and carrying of any person from one place to another; or
2) The enticing or persuading of any person to go from one place to another; or
3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Essential elements of aggravated rape which are not elements of aggravated kidnapping are proof of sexual intercourse and proof that the defendant is armed with a dangerous weapon. Proof that the victim was forcibly seized and carried from one place to another, and that she was forced to do something in order to secure her release are elements of aggravated kidnapping but not aggravated rape. Louisiana courts have allowed several convictions for both aggravated kidnapping and aggravated rape arising out of the same series of transactions to stand. See State v. Winn, 412 So.2d 1337 (La.1982); State v. Desdunes, 477 So.2d 910 (La.App. 4th Cir. 1985); State v. Doolittle, 482 So.2d 896 (La.App.2d Cir.1986), writ denied, 488 So.2d 687 (La.1986); and State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). This assignment of error is therefore without merit.
Sufficiency of the Evidence
In his second assignment of error, the defendant asserts that the trial court erred in denying his motion for a post-verdict judgment of acquittal based on the allegation that the State failed to prove that the defendant forced the victim to give up something of value in exchange for her release. In his fourth assignment of error, the defendant asserts that the trial court erred in denying his motion for a new trial based on the allegation that the State failed to prove that the defendant did not force the victim to engage in sexual intercourse or prostitution in order to secure her release.
In State v. Doolittle, supra, the defendant was convicted of aggravated rape, aggravated kidnapping and other crimes arising from the same series of transactions. The defendant abducted the victim, threatening to kill her, and forced her to undress at gunpoint. He raped and sodomized her, and then returned her to the hospital from where he had abducted her and released her. The court reduced the conviction for aggravated kidnapping to simple kidnapping because the record did not support a finding that the victim was forced to engage in sexual relations with the defendant in order to secure her release.
This court took the same action in State v. Arnold, 535 So.2d 937 (La.App. 2d Cir. 1988), stating: "Where there is no evidence that the defendant forced the victim to submit sexually to him in order to secure her release, the essential ransom element of the crime [of aggravated kidnapping] cannot be found beyond a reasonable doubt." id., at 940. In that case, upon questioning at trial, the victim stated that the defendant did not tell her that he would release her if she had sex with him. See also State v. Rodrigue, 441 So.2d 1274 (La.App. 1st Cir.1983), writ denied, 445 So.2d 436 (La.1984).
The cases cited above are distinguishable from the one under consideration here. The first rape and/or act of oral sex does not support the conviction for aggravated kidnapping; the victim testified that she had sex with him because she was afraid *744 that he would kill her. Obviously, the defendant had not given her reason to think that he would release her at this point. However, the victim and the defendant did engage in conversation involving her release, and came to the agreement that if she would make money for him by prostitution, he would let her go. The defendant then told her that if she tried to escape he would shoot her. Subsequent to the discussion regarding her release, the defendant raped her again and forced her to engage in oral sex again.
The performance of a sexual act for the benefit of the offender is "something of value." State v. Branch, 475 So.2d 388 (La.App. 1st Cir.1985); State v. Rodrigue, supra; State v. Rault, supra. Since the discussion regarding the victim's release took place prior to the rape in the park, the jury could have reasonably concluded that the defendant forced her to engage in sexual relations in order to secure her release.
Moreover, the victim testified that defendant specifically stated he would release her if she engaged in prostitution to make money for him. He forced her, at knife-point, to go into the bar to prostitute herself in order to secure her release. Thus the State has adequately proven this element of the offense, and these assignments of error are without merit.
Disqualification of a Juror
In this assignment of error, the defendant alleges that the trial court committed reversible error in denying his motion for a new trial based on the fact that one juror was a convicted felon, contrary to the evidence adduced at voir dire. The trial court asked the panel as a whole if anyone had ever been convicted of a felony and the juror in question, Curtis Dantzler, remained silent. One of the qualifications to serve as a juror is that the person not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned. La.C.Cr.P. Art. 401 A(5).
The motion for a new trial is governed by La.C.Cr.P. Art. 851. There must be a showing of injustice for the granting of the new trial to be proper. The defendant must prove that he was not aware of the juror's status when he accepted him and that he could not have discovered this information by the exercise of due diligence. La.C.Cr.P. Art. 851(4); State v. Herrod, 412 So.2d 564 (La.1982). When a motion for new trial is based on newly-discovered evidence, the motion must contain allegations of facts sworn to by the defendant or his counsel showing the specific nature of the error or defect complained of and that the error was not discovered before or during trial, despite the exercise of reasonable diligence. La.C.Cr.P. Art. 855; State v. Herrod, supra. In Herrod, the denial of the motion for a new trial was found to be proper because the defendant failed to show due diligence and because the attestation of La.C.Cr.P. Art. 855 was not included in the motion for a new trial. See also State v. O'Blanc, 346 So.2d 686 (La.1977).
Due diligence in discovering if a juror is a convicted felon requires that the defendant specifically ask questions relating to prior felony convictions and that the juror falsely deny their existence. State v. Baxter, 357 So.2d 271 (La.1978). In Baxter, the court noted that for a new trial to be warranted, the defendant must also show that he was prejudiced by the juror's misstatements. The court in that case reasoned that a juror with a former felony conviction would be more sympathetic to the defendant than to the State, and that therefore, a misstatement by the juror that he was not a convicted felon would not prejudice the defendant.
In this case the trial court asked the panel as a group if anyone had been convicted of a felony and Dantzler remained silent. The defendant's attorney did not ask this juror individually if he had been convicted of a felony.
In any event, however, the defendant has failed to show that he was prejudiced. In State v. Duplissey, 529 So.2d 1379 (La. App. 2d Cir.1988), we found that prejudice did not exist where a juror stated falsely on voir dire that he was literate. The verdict of guilty was by an 11-1 verdict for conviction, with only a 10-2 verdict needed. We found there was no prejudice because the *745 unqualified juror's vote was not needed. Here, the guilty verdict was unanimous, with only ten votes needed to convict. Therefore, under State v. Duplissey, supra, defendant was not prejudiced by this error and it is not grounds for reversal. This assignment of error is without merit.
Conclusion:
For the reasons explained, the defendant's conviction and sentence are AFFIRMED.
NORRIS, Judge, concurs with reasons.
I concur in the result but do not completely agree with the treatment of assignment of error no. 2. The evidence, viewed in the light most favorable to the state, is sufficient to convince a rational factfinder beyond a reasonable doubt that defendant forcibly seized and carried the victim from one place to another with the intent of forcing her to prostitute herself and give him the money in order to secure her release.